## FRED TEICHERT v. COUNTY OF CHIPPEWA.[1]

February 6, 1948.

No. 34,451.

*Sigvald B. Oyen* and *John P. Nelson,* for appellant.
*Lauerman & Pfeiffer,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from a judgment in favor of petitioner (plaintiff) determining that certain assessments for construction and subsequent repair of county ditch No. 17 in Chippewa county, Minnesota, were invalid.

[1]Reported in 31 N. W. (2d) 11.

February 27, 1912, A. Eenkema was the owner in fee of the S½ SE¼ of section 17 (hereinafter referred to as tract A), the SW¼ of section 17 (tract B), and the NE½ of section 20 (tract C), all in township 117 north, range 37 west, Chippewa county, Minnesota. He continued to be the fee owner of all three tracts until he lost title thereto by the foreclosure of a mortgage which on September 27, 1923, he and his wife had given to the Prudential Insurance Company of America. Upon the foreclosure sale, the mortgagee bid in the property. No redemption was made. Petitioner herein purchased the three tracts on a contract for deed from the Prudential company. He received a deed pursuant to the contract on March 1, 1937.

County ditch No. 17 in Chippewa county was established and constructed in 1915. Tracts A, B, and C were duly assessed therefor, and payment thereof was to be made of interest alone for the first five years, after which the principal and subsequent interest was to be paid over a 15-year period, that is, from 1921 to 1935. Tract C was assessed $2,452.50. The record shows, and it is undisputed, that all 15 payments running from 1921 to 1935 in regard to tracts A and B were paid in full and so shown to be in the official records of the county auditor. It was further shown, and it is not disputed, that the first seven installments regarding tract C were paid annually and that opposite the entry for 1927 in the Ditch Lien Record No. 2 for the land described as tract C there were written, in the handwriting of the then county auditor, the words "paid in full." Later, when petitioner received his abstract of title from the Prudential company, the county auditor certified, pursuant to M. S. A.[2] 106.46, an instrument known as an *auditor's certificate,* releasing the ditch lien. This certificate was duly witnessed and acknowledged, and the auditor stated therein that the ditch assessments against tracts A, B, and C were paid in full and consequently the lands were released of the liens in the register of deeds' office. Under the same statute, the register of deeds was authorized and required by law to discharge the liens of record.

[2]Minnesota Statutes 1945.

No question was raised by the board or by the auditor about the quoted notation or the payment which it indicated until 1944, at which time, on December 6, the board directed the then county auditor to place upon tract C a ditch assessment for the cost of original construction in the amount of $2,452.50. At the same meeting, the board voted a levy of 15 percent of the original construction cost of county ditch No. 17, for the purpose of reimbursing the general revenue fund for money used for the repair of that ditch from 1931 to 1944. This assessment was required to be paid in three installments with the taxes for the years 1944, 1945, and 1946, with interest at three percent from June 1, 1944.

The auditor, in part disregarding his instructions, prepared and noted an assessment for the original construction costs of county ditch No. 17, in the amount of $1,308, upon and against tract C. He also noted an assessment for the cost of repairs during the years 1931 to 1943, which was entered upon and against tracts A, B, and C. It is undisputed that when the board ordered the assessment for these repairs from 1931 to 1943 no tabular statement and lien was filed as required by Minn. St. 1941, 106.48, as amended by L. 1943, c. 626, § 2, subsec. (b).

The lower court found that the construction assessment against tract C had been fully paid. It also found that the assessment for repairs against the three tracts was invalid for lack of compliance with the statute above cited. The record fails to show under which statute the board was attempting to proceed, but perhaps we should assume that, since it ordered no filing of a tabular statement and lien, it was not aware of the amendment of 1943 and was, as it thought, proceeding under Minn. St. 1941, 106.48.

The issues here are (1) whether or not the evidence sufficiently sustains the finding of the trial court that the original construction cost for tract C had been fully paid, and (2) whether or not the levy for repairs against all three parcels was valid.

■ The evidence sustains the finding of the trial court that the levy for the construction of the ditch against tract C was fully paid. The entry of "paid in full" in the official record in the hand-

writing of the then county auditor was not questioned from 1927, when it was made, until 1944. It is undisputed that the same county auditor in 1937 executed a release in conformity with M. S. A. 106.46, which showed that the ditch liens against the property had been fully paid. The release was filed and recorded in the register of deeds' office discharging any such lien. The auditor checked the record before such release was executed, and it showed full payment then as it had in 1927. Again, no question was raised as to the correctness of the notation. The facts justify the court's finding of payment in full. It is therefore unnecessary to consider the effect of the certificates as a release or estoppel.

■ In making provision for the payment of repairs, the county board, if acting under the provision of Minn. St. 1941, 106.49, which provides for repairs in the nature of improvements, had a duty to proceed on the basis of a petition, notice, hearing, engineer's examination, et cetera.

If acting under Minn. St. 1941, 106.48, which provides for repairs of a restorative nature only, the board had a definite procedure to follow. If there were not sufficient funds to the credit of the drainage system to pay for such repairs, the county board could pay for them out of the general revenue fund and assess the cost for repairs upon the lands originally assessed for benefits in proceedings for construction of the ditch. The question presented here is whether, if the board was proceeding under Minn. St. 1941, 106.48, it was necessary to file a tabular statement and lien, and whether the payment of such repair costs was subject to the provision in L. 1943, c. 626, which was enacted before the board acted in 1944.

In the statute relating to the construction, maintenance, and repair of public drainage systems, those provisions which later appeared as subsections (a) and (b) until the statute (§ 106.48) was repealed in 1945, were previously in L. 1925, c. 415, § 53, and were amended by L. 1927, c. 51, § 2. In that amendment, for the first time appeared subsec. (c), which was incorporated into Mason St. 1927, 6840-53, along with subsecs. (a) and (b). Subsec. (c)

provided complete authority and procedure for creating a fund in the general ditch fund[3] to the credit of each of such "drainage systems" to be used for "such repairs." L. 1943, c. 626, amended subsecs. (a) and (b) of Mason St. 1927, 6840-53 (L. 1927, c. 51, § 2) and was in effect at the time the county board attempted to make the assessments here under consideration, but did not either amend or repeal subsec. (c). Subsec. (a), as amended, authorized the repairs without further assessment in case there were sufficient funds to the credit of the drainage system involved. Subsec. (b), as amended, provided, in case there were insufficient funds to the credit of the ditch system, that the board might advance the funds from the general revenue fund and reimburse it by assessment of the lands benefited by the ditch. The proviso added to subsec. (b) by the 1943 amendment read as follows:

"* * * *Provided, however, that for the purpose of creating a fund to the credit of each such drainage system to be used for repairs exclusively, the county board is hereby authorized to apportion and assess the amount of said fund so to be created, by ordering the filing of an additional tabular statement and lien against all of the parcels of land originally assessed for benefits in proceedings for the construction of such ditch system and in the same proportion as in the original lien statement. The funds so created to the credit of any drainage system by the filing of additional liens and the amount authorized to be expended for repairs under these provisions shall not exceed ten per cent of the original cost of constructing said ditch system, during any five year period. Such assessments may be made payable in not to exceed five annual installments, as ordered by the county board."*

It required the board to make the assessment "by ordering the filing of an additional tabular statement and lien." Since subsec. (c) provided complete authority and procedure for creating a fund in the general ditch fund to the credit of each drainage system, the leg-

---

[3]Our attention has not been called to any authority for a general ditch fund.

islature would not duplicate such provisions in subsec. (b). Obviously, then, it must have been the purpose of the 1943 amendment of subsec. (b) to provide procedure for the creation of a fund to be used to reimburse the general revenue fund. In fact, the so-called proviso to subsec. (b) is but a continuation of the sentence which starts with the words: "To raise the necessary money to reimburse the general revenue fund * * *." We conclude, therefore, that the legislative purpose, though it could have been more clearly expressed, was to require the filing of the tabular statement and lien, although the assessment was for repairs, as distinguished from improvements.

Therefore, at the time the county board was seeking to reimburse the general revenue fund by assessing the costs of repairs previously made, the proviso of subsec. (b) applied, and the board was required to order the filing of an additional tabular statement and lien against all the parcels of land in order to comply with its requirements.

The obligation of the citizen to pay taxes is purely a statutory creation, and taxes can be levied, assessed, and collected only in the method pointed out by express statute. People ex rel. Eitel v. Lindheimer, 371 Ill. 367, 21 N. E. (2d) 318, 124 A. L. R. 1472, appeal dismissed, 308 U. S. 505, 60 S. Ct. 111, 84 L. ed. 432, rehearing denied, 308 U. S. 636, 60 S. Ct. 137, 84 L. ed. 529. The trial court was right in holding the assessments invalid.

Affirmed.